J-S54021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH GLASS | |
| Appellant | No. 3401 EDA 2014 |

Appeal from the PCRA Order November 14, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005614-2010

BEFORE:  BOWES, J., PANELLA, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED October 6, 2015**

Appellant, Joseph Glass, appeals from the order entered November 14, 2014, in the Court of Common Pleas of Bucks County, which denied his Post Conviction Relief Act[1] ("PCRA") petition.  No relief is due.

The factual history of this matter is well known to the parties, so we rely upon the PCRA court's recitation of the facts as set forth on pages one to three of the March 30, 2015 opinion.  Briefly, on February 10, 2011, the trial court sentenced Glass to 10 to 24 years in prison and ordered to pay restitution of $198,916.32, following his convictions for arson and recklessly endangering another person.  This Court affirmed Glass's judgment of sentence on appeal, and the Pennsylvania Supreme Court denied *allocatur*.

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

*See Commonwealth v. Glass*, 50 A.3d 720 (Pa. Super. 2012), *appeal denied*, 63 A.3d 774 (Pa. 2013). Glass timely filed the instant PCRA petition. The PCRA court conducted an evidentiary hearing, after which, the court dismissed the petition. This timely appeal followed.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Edmiston*, 65 A.3d 339, 345 (Pa. 2013) (citation omitted), *cert. denied*, *Edmiston v. Pennsylvania*, 134 S. Ct. 639 (2013). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012) (citation omitted).

In order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). These issues must be neither previously litigated nor waived. *See* 42 Pa.C.S.A. § 9543(a)(3). "[T]his Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

As this Court has repeatedly stated,

> [t]o plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective

- 2 -

reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111, 1127 (2011).

***Commonwealth v. Rykard***, 55 A.3d 1177, 1189-1190 (Pa. Super. 2012), ***appeal denied***, 64 A.3d 631 (Pa. 2013).

Glass argues that trial counsel was ineffective for failing to object to instances of prosecutorial misconduct during the Commonwealth's closing argument, or to otherwise request the trial court issue a cautionary instruction to the jury. We disagree. We have previously recognized that

> "[n]ot every unwise remark made by an attorney amounts to misconduct or warrants the grant of a new trial." ***Commonwealth v. Carson***, 913 A.2d 220, 242 (Pa. 2006). "Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." ***Commonwealth v. Stokes***, 839 A.2d 226, 230 (Pa. 2003), quoting ***Commonwealth v. Fisher***, 813 A.2d 761, 768 (Pa. 2002).
>
> Furthermore, according to the Pennsylvania Supreme Court in ***Commonwealth v. Chmiel***[, 889 A.2d 501, 543-44 (Pa. 2005)]:
>
>> In determining whether the prosecutor engaged in misconduct, courts must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. A remark by a prosecutor, otherwise improper, may be appropriate if it is in [fair] response to the argument and comment of defense counsel. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

***Commonwealth v. Collins***, 70 A.3d 1245, 1252-53 (Pa. Super. 2013), ***appeal denied***, 80 A.3d 774 (Pa. 2013).

While "it is improper for a prosecutor to express a *personal belief* as to the credibility of the defendant or other witnesses," the "prosecutor may comment on the credibility of witnesses." ***Commonwealth v. Judy***, 978 A.2d 1015, 1020 (Pa. Super. 2009) (citation omitted) (emphasis added). "[W]hen assessing a claim of [prosecutorial misconduct], the appellate court must consider whether the prosecutor made a deliberate attempt to destroy the objectivity of the factfinder or merely summarized the evidence presented at trial with the oratorical flair permitted during argument." ***Commonwealth v. Novasak***, 606 A.2d 477, 481 (Pa. Super. 1992) (citation omitted).

We have reviewed Glass's issue raised on appeal, along with the briefs of the parties, the certified record and the applicable law. Having determined that the Honorable Diane E. Gibbon's March 30, 2015 opinion ably and comprehensively disposes of the issue on appeal, with appropriate reference to the record and without legal error, we affirm based on that opinion. ***See*** PCRA Court Opinion, 3/30/15 at 3-12.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/6/2015

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | No.   CP-09-CR-0005614-2010 |
| v. | : | |
| JOSEPH GLASS | : | |

## OPINION

Petitioner, Joseph Glass, appeals from this Court's order dated November 14, 2014,

denying his request for relief pursuant to the Post Conviction Relief Act ("PCRA").[1]

The facts and procedural history of the case were summarized in this Court's opinion for

purposes of direct appeal as follows:

On July 26, 2010, [Petitioner] was charged with intentionally starting a fire at his home in Upper Southampton Township, Bucks County, thereby placing his thirty-five-year-old wife and their two children, ages five and seven, in danger of death or bodily injury. On January 14, 2011, following a four-day trial by jury, [Petitioner] was convicted of Arson,[2] and three counts of Recklessly Endangering Another Person.[3] On February 10, 2011, [Petitioner] was sentenced to an aggregate sentence of 10 to 24 years in a state correctional facility and restitution in the amount of $198,916.32. On April 13, 2011, [Petitioner's] Motion to Reconsider Sentence was denied. [Petitioner] thereafter filed a timely appeal from the judgment of sentence.

The history of this case began in the summer of 2009. At that time, Mrs. Glass learned that [Petitioner] was having an affair with one Julie Luther. When she found out, she asked [Petitioner] to leave. [Petitioner] moved out of the family home. In August of 2009, Mrs. Glass allowed [Petitioner] to move back into the home believing that the couple had reconciled.

On the evening of December 19, 2009, [Petitioner], Mrs. Glass and their two young children were at home. After Mrs. Glass and the children went to sleep, [Petitioner] left the residence and met Julie Luther at a local bar. Ms. Luther testified, that despite [Petitioner's] statement to his wife regarding reconciliation, she and [Petitioner] had continued their affair. At approximately 1:00 a.m. on

---

[1] 42 Pa.C.S. §§ 9541 et seq.
[2] 18 Pa.C.S. §3301(a)(1)(i).
[3] 18 Pa.C.S. §2705.

December 20th, Mrs. Glass woke up and realized her husband was not home. When she called him on his cellular telephone she learned that [Petitioner] was with Ms. Luther.

When [Petitioner] subsequently returned home from the bar, an argument ensued. Mrs. Glass insisted that [Petitioner] was having an affair and demanded that he "get out." [Petitioner] continued to deny that he was with Ms. Luther and continued to deny that he was having an affair. After arguing for some period of time, Mrs. Glass fell asleep. [Petitioner] again left the residence. This time he went to Luther's residence where he remained for several hours. He ultimately returned home and went to sleep at approximately 7:30 a.m.

At approximately 9:00 a.m., Mrs. Glass awoke and again demanded [Petitioner] leave the residence. [Petitioner] continued to deny the affair. As the two continued to argue, [Petitioner] called 911. Police responded to the residence and spoke to both parties. [Petitioner] ultimately agreed to leave the property. Despite that agreement, shortly after the police left, [Petitioner] returned and entered the home. Mrs. Glass again demanded he leave. After [Petitioner] left the home, Mrs. Glass locked the doors to the residence. [Petitioner], however, did not leave the property. He retrieved a spare key to the door leading into the basement from the garage, unlocked the door and entered the residence. He remained in the garage/basement area for approximately five minutes. He then walked out of the residence, got into his vehicle and left the property.

After [Petitioner] left the property, Mrs. Glass remained inside the residence. The two children went outside to play in the snow. While Mrs. Glass was still standing the kitchen speaking on the telephone, her seven-year-old daughter appeared and told her that "the heater's smoking." Mrs. Glass's daughter then led her into the living room to show her what she had seen. There Mrs. Glass observed smoke pouring from the baseboard and through the carpets. Mrs. Glass immediately called 911 and screamed to her daughter to get out of the house. Mrs. Glass ultimately fled the residence in a t-shirt and a pair of sweat pants. Mrs. Glass and her children escaped the blaze without injury.

As the house burned, [Petitioner] delayed returning to the residence for a significant period of time despite multiple calls from the Petitioner's siblings advising him that his home was on fire. [Petitioner's] cell phone records established that he made no calls to check on the welfare of his family.

While attempting to extinguish the fire, two firefighters became trapped in the residence and were forced to issue a "mayday" call. Due to the efforts of other firefighters, they were successfully rescued from the burning building. The firefighters were ultimately able to extinguish the fire. The residence, a one story ranch style home, suffered extensive fire damage. The main floor of the home partially collapsed into the basement. Subsequent investigation revealed the fire was incendiary in nature and originated in the basement of the home.

2

After the fire, [Petitioner] was interviewed by police and insurance company investigators. [Petitioner] admitted at trial that he lied on multiple occasions during both of the investigations.[4]

On July 9, 2012, judgment of sentence was affirmed by the Superior Court.[5] On September 7, 2012, Petitioner's application for reargument *en banc* was denied. On February 14, 2013, Petitioner's petition for allowance of appeal to the Supreme Court was denied.

On April 17, 2013, Petitioner filed a PCRA petition alleging ineffective assistance of trial counsel. On July 11, 2014, a PCRA hearing was held. By order dated November 14, 2014, this Court denied Petitioner's PCRA petition.

To obtain PCRA relief, Petitioner must plead and prove by a preponderance of the evidence that his conviction resulted from one of the enumerated grounds for relief set forth in 42 Pa.C.S. § 9543(a)(2). One of the enumerated grounds for relief is ineffective assistance of counsel.[6] Generally, counsel is presumed to have provided constitutionally adequate representation. Commonwealth v. Smith, 609 Pa. 605, 623, 17 A.3d 873, 883 (2011). In order to establish ineffective assistance of counsel which would warrant relief, Petitioner is required to plead and prove (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell Petitioner from counsel's act or omission. Id. To prove prejudice, Petitioner must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). Stated another way, there must be a reasonable probability that the result would have been different, but for counsel's ineffectiveness. Id.; Commonwealth v. Flood, 426 Pa.Super. 555, 571, 627 A.2d 1193, 1201 (1993). A claim of

---

[4] Trial Court Opinion, filed 7/22/11, at 1-4.
[5] Commonwealth v. Glass, 50 A.3d 720 (Pa.Super.2012) (Docket Number 1280 EDA 2011, 7/09/12).
[6] 42 Pa.C.S. § 9543(a)(2)(ii).

3

ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs. Commonwealth v. Washington, 592 Pa. 698, 927 A.2d 586, 594 (2007). Trial counsel cannot be deemed ineffective for failing to raise a meritless claim. Commonwealth v. Travaglia, 541 Pa. 108, 137, 661 A.2d 352, 366 (1995).

In the instant case, Petitioner argued that trial counsel was ineffective for failing to object and for failing to request appropriate cautionary instructions when the prosecutor expressed his personal opinion as to Petitioner's guilt, his personal opinion as to Petitioner's credibility, and his personal opinion as to the credibility of Mrs. Glass.[7]

There is no question that it is improper for a prosecutor to express a *personal opinion* as to a defendant's guilt or the credibility of a defendant or other witnesses. Commonwealth v. Koehler, 558 Pa. 334, 363, 737 A.2d 225, 240 (1999). However, "it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the Petitioner's guilt." Commonwealth v. Burno, __ Pa. ___, 94 A.3d 956, 974 (2014), cert. denied sub. num., Burno v. Pa., 2015 WL 852 444 (U.S. 2015)). It is also entirely proper for a prosecutor to comment on and to argue the credibility of the witnesses, including that of a defendant. Commonwealth v. Sanchez, ___ Pa. ___, 82 A.3d 943, 981 (2013); Commonwealth v. Chmiel, 585 Pa. 547, 889 A.2d 501, 545 (2005). Moreover, "[a] prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." Sanchez, 82 A.3d at 981; Commonwealth v. Spotz, 616 Pa. 164, 222, 47 A.3d 63, 97 (2012). It is well-established that a prosecutor "must be free to present his or her arguments with logical force and vigor, and comments representing mere oratorical flair are not objectionable." Burno, 94 A.3d at 974.

---

[7] Pet. for Relief Under the Post Conviction Relief Act, p. 7, ¶ 10.

4

Petitioner claims that "the prosecutor unfairly and improperly invaded the province of the jury to determine the credibility of witnesses by injecting his own personal view as to the ...credibility of the Petitioner"[8] and that "the prosecutor did not hesitate to convey his own opinion to the jury that the Petitioner was guilty."[9] Contrary to Petitioner's assertion, a review of the record reveals that the prosecutor did not offer his personal opinion as to Petitioner's credibility or as to Petitioner's guilt. Trial counsel cannot be deemed ineffective for failing to interpose a frivolous objection. Travaglia, supra.

Petitioner asserts that "the Commonwealth repeatedly attempted to smear the Petitioner's character by branding him ... a liar[.]"[10] This argument also lacks merit. The courts have repeatedly held that "a prosecutor's comments stating that a defendant had lied were neither unfair nor prejudicial when given in response to the comments of defense counsel in relation to the credibility of witnesses, and when they were supported by the evidence." Commonwealth v. Koehler, 558 Pa. 334, 363, 737 A.2d 225, 240-241 (1999); accord Sanchez, 82 A.3d at 981; Commonwealth v. Glass, 486 Pa. 334, 347, 405 A.2d 1236, 1243 (1979).

It is well-established that "false or contradictory statements by the accused are admissible since the jury may infer therefrom that they were made with an intent to divert suspicion or to mislead the police or other authorities, or to establish an alibi or innocence, and hence are indicatory of guilt." Glass, 486 Pa. at 346-347, 405 A.2d at 1242. A false denial of guilt (such as a fallacious alibi) by an accused is admissible as substantive evidence of his consciousness of guilt. Commonwealth v. Boyle, 498 Pa. 486, 447 A.2d 250 (1982); Glass, 486 Pa. 334, 405 A.2d 1236; Commonwealth v. Cristina, 481 Pa. 44, 391 A.2d 1307 (1978); Commonwealth v. Pritchard, 270 Pa.Super. 461, 411 A.2d 810 (1979). In the instant case, the evidence

---

[8] Id. at p. 7, ¶ 10.
[9] Id. at p. 3, ¶ 8.
[10] Id.

5

demonstrated that Petitioner had lied repeatedly to his spouse, to police, and to his insurance company. That evidence was properly admitted as substantive evidence indicative of guilt. Once properly admitted, the prosecutor was entitled to comment on that evidence. See Sanchez, 82 A.3d at 981.

The prosecutor's arguments in this regard were proper. The prosecutor painstakingly identified each of the false statements and properly argued how those statements demonstrated Petitioner's guilt. The prosecutor properly pointed out that Petitioner lied to his insurance company regarding the cause of the argument that preceded the fire to divert suspicion,[11] that he lied to his insurance company about his extramarital affair to conceal his motive for setting the fire,[12] that he lied when he denied returning to the house after the argument but before the fire started to conceal his presence at the scene of the crime,[13] that he lied about the garage door being locked in an attempt to convince authorities that he had no access to the location where the fire started,[14] that he lied about his whereabouts and communications with third parties during and after the fire to conceal his presence at the scene of the crime and to explain his failure to respond appropriately once he was informed that his home and family were in potential danger,[15] and that his inconsistent statements regarding his wife's smoking and his handling of a hand-held torch when questioned about the possible causes of the fire were lies designed to divert suspicion to his wife or to otherwise divert suspicion from himself by offering an innocent explanation for the fire.[16]

---

[11] N.T. 1/14/11 p. 745.
[12] Id. at 750.
[13] Id. at 746-747.
[14] Id. at 756-757.
[15] Id. at 749-750, 771.
[16] Id. at 752-756.

6

Moreover, the prosecutor's comments regarding whether Petitioner "lied" were a fair and direct response to Petitioner's assertions and defense counsel's arguments that Petitioner's statements were not intentional falsehoods but rather a result of misunderstandings, confusion, repetitive questioning, and the inability to recall minor details.[17] Trial counsel also argued that Petitioner's testimony regarding false and inconsistent statements was a product of a talented, educated prosecutor taking advantage of an inexperienced, less educated witness.[18] To rebut these arguments, the prosecutor properly argued that Petitioner did not indicate that he was not sure or did not remember when questioned but, rather, was "very sure of his lies."[19] It was also fair response to Petitioner's claim that he was "outsmarted," for the prosecutor to argue that "[t]elling the truth is not a measure of intelligence.... You gotta be kind of smart to lie effectively.... Telling the truth you can't be outsmarted."[20] The prosecutor's closing arguments were fair comments on admitted evidence and fair rebuttal to defense arguments. Id.; Spotz, 616 Pa. at 222, 47 A.3d at 97.

Having determined that the prosecutor's comments on closing argument were entirely proper, trial counsel cannot be deemed ineffective for failing to object. As previously stated, counsel cannot be held to be ineffective for failing to pursue a meritless claim.[21]

Even assuming arguendo that Petitioner's underlying claims did not lack "arguable merit," he would not otherwise be entitled to relief since Petitioner did not meet his burden of proving prejudice, i.e., that there is a reasonable probability that, but for counsel's failure to

---

[17] N.T. 1/11/11, Transcript of Jury Trial Proceedings, p. 39; N.T. 1/14/11 pp. 722, 724.
[18] N.T. 1/14/11 p. 722.
[19] Id. at 749.
[20] Id. at 760.
[21] Trial counsel rightly testified at the PCRA hearing that she did not believe that the prosecutor's comments were objectionable, as it was the prosecution's theory of the case that Petitioner had lied, especially in light of the fact that the Petitioner admitted during his testimony that he had lied during the investigation. N.T. 7/11/14 pp. 12-13.

7

object to the challenged portions of the prosecutor's closing argument, the factfinder would have had a reasonable doubt respecting guilt.

> Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Id. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made. Id. The effect of the prosecutor's remarks must be evaluated in the context and atmosphere of the entire trial. Commonwealth v. Cox, 556 Pa. 368, 728 A.2d 923, 932 (1999) (citing Commonwealth v. Stoltzfus, 462 Pa. 43, 337 A.2d 873, 882 (1975)).
>
> Moreover, not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial. Commonwealth v. Cox, 603 Pa. 223, 983 A.2d 666, 687 (2009). "Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." Id.
>
> To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. Id. at 685 (quoting Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987)). The touchstone is the fairness of the trial, not the culpability of the prosecutor. Id.

Sanchez, 82 A.3d at 981.

In the instant case, trial counsel conceded in her opening statement and in her closing argument that Petitioner lied.[22] The prosecutor's statements regarding Petitioner's lies, his argument that everything Petitioner said to the police, to his insurance company, and to the jury "is fiction,"[23] and his reference to Petitioner's "made-up story"[24] cannot, in light of trial counsel's arguments, be said to have the unavoidable effect of prejudicing the jurors, forming in their minds a fixed bias and hostility toward Petitioner such that the jury could not weigh the evidence and render a true verdict.

---

[22] N.T. 1/11/11, Transcript of Jury Trial Proceedings, pp. 26, 36; N.T. 1/14/11 p. 715.
[23] N.T. 1/14/11 p. 762.
[24] Id. at 749-750.

8

As to Petitioner's challenge to the prosecutor's arguments concerning the credibility of Mrs. Glass, contrary to Petitioner's assertion, a review of the record reveals that the prosecutor did not offer his personal opinion as to the credibility of Mrs. Glass. His argument that she told the truth was a fair comment based on the evidence and fair rebuttal to both Petitioner's argument that she started the fire and Petitioner's assault on her credibility.[25] As with Petitioner's first challenge to the prosecutor's argument, Petitioner has failed to prove that the underlying legal issue has arguable merit and is, therefore, not entitled to PCRA relief.

Regarding Petitioner's allegation that trial counsel was ineffective for failing to request a limiting instruction, this Court fully instructed the jury, both at the beginning of the trial and in its final instructions, that the jury was not to consider the attorneys' arguments as evidence and that it was the sole responsibility of the jury to determine the credibility of the witnesses.[26] The jury is presumed to have followed the trial court's instructions. Burno, supra.

Petitioner next argues that trial counsel was ineffective for failing to object to the prosecutor injecting his personal opinion as to Petitioner's "lack of moral character."[27] A review of the record demonstrates that the prosecutor offered no such opinion.

Evidence of Petitioner's extramarital affair was properly admitted as part of a chain or sequence of events which formed the history of the case and were part of its natural development, i.e., the *res gestae* exception to the rule prohibiting evidence of prior bad acts to prove a defendant acted in conformity with those acts, to demonstrate a criminal propensity, or to portray a defendant as a bad person. See Commonwealth v. Sherwood, 603 Pa. 92, 982 A.2d 483, 497 (2009); Commonwealth v. Lark, 518 Pa. 290, 543 A.2d 491, 497 (1988). The evidence was also relevant and admissible to prove motive. Commonwealth v. Philistin, 617 Pa. 358, 53

[25] Id. at 763-764, 765-766.
[26] N.T. 1/11/11, Transcript of Jury Trial Proceedings, p. 7; N.T. 1/14/11 pp. 780-781.
[27] Pet. for Relief Under the Post Conviction Relief Act, p. 7, ¶ 10.

9

A.3d 1, 18 (2012); Pa.R.E., Rule 404. Once properly admitted, the prosecutor was entitled to comment on that evidence. Having determined that the prosecutor's comments on closing argument were entirely proper, trial counsel cannot be deemed ineffective for failing to interpose a frivolous objection.

Moreover, Petitioner cannot complain about being "branded an adulterer"[28] given the fact that his defense hinged on evidence of his infidelity. In her opening statement, trial counsel posed the following question: "[i]f there is equal means, motive and opportunity to start a fire, who had the temperament and the character to act out of anger and revenge to do so?"[29] In her closing argument, trial counsel proposed an answer to that question:

> And if you ask the right question, you'll often get the right answer.
> But if you ask the question, 'Who lied in this case,' you're going to get Joe Glass."
>
> If you ask the question, 'Who was so angry, so enraged,' you're going to get a different answer. Who felt wronged? Who felt they wanted to get back? ...
>
> There's an old saying, 'Hell hath no fury like a woman scorned.'[30]

Finally, Petitioner alleges that trial counsel should be found to be ineffective for failing to request a cautionary instruction with regard to this evidence. The standards for evaluating this claim were recently set forth in Commonwealth v. Weiss, 622 Pa. 663, 510 A.3d 767, 798 (2013) (emphasis added):

> [W]hile evidence of prior bad acts may be relevant and admissible, there is the "potential for misunderstanding on the part of the jury when this type of evidence is admitted." Commonwealth v. Claypool, 508 Pa. 198, 495 A.2d 176, 179 (1985). This evidence must, therefore, "be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted." Id. In the context of

---

[28] Id. at p. 3, ¶ 8.
[29] N.T. 11/11/11, Transcript of Jury Trial Proceedings, pp. 25-26.
[30] N.T. 11/14/11 pp. 715-716.

> an ineffectiveness claim, **counsel's failure to request a cautionary instruction regarding evidence of other crimes or prior bad acts does not constitute *per se* ineffectiveness;** "[r]ather, **in order to obtain relief under such a claim, a defendant must still satisfy each of the three prongs of the test for ineffective assistance of counsel.**" Commonwealth v. Buehl, 540 Pa. 493, 658 A.2d 771, 778 (1995) (plurality).

In the instant case, any potential bias that might arise from the fact that Petitioner was involved in an extramarital affair was addressed during jury selection. Each of the jurors selected indicated that Petitioner's infidelity would not affect their ability to be fair and impartial.[31] Petitioner has, therefore, failed to establish the required prejudice, i.e. "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra.

---

[31] During voir dire, trial counsel asked potential jurors:

> You will hear in this case that the parties are in the process of a divorce, and that Mr. Glass was having an affair with another woman. Would that fact alone, that he was having an affair, admittedly, make it difficult for you to be fair and impartial in this case?

All jurors who answered affirmatively were dismissed for cause. N.T. 1/11/11, Jury Selection, pp. 17, 26.

11

For the reasons set forth above, this Court denied Petitioner's request for relief pursuant to the Post Conviction Relief Act.

BY THE COURT:

3-30-15
**Date**

**DIANE E. GIBBONS, J.**

12